# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL JEROME JENNINGS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NO.: 1:22-cv-01165-RDP |
| | ) |
| **CHRISTOPHER SMITH,** *et al.***,** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SUPPLEMENTAL BRIEF

Come now the Defendants, Christopher Smith, Justin Gable, Jeremy Brooks, and the City of Childersburg, and pursuant to this Court's September 28, 2023 order requiring supplemental briefing (Doc. 57), respectfully state as follows:

### I.  Procedural History

#### A.  Overview

This case is pending before this Court on a motion to dismiss and accompanying brief filed by the City (Docs. 46, 46-1) and a motion for summary judgment and accompanying brief filed by Defendant Officers Smith, Gable, and Brooks (Docs. 48, 48-1). Plaintiff Jennings filed oppositions to the motions (Docs. 51, 52) and Defendants filed replies. (Docs. 55, 56). Plaintiff has now also filed his supplemental brief. (Doc. 58.)

#### B.  Defendants' Arguments During Dispositive Motion Briefing

Among other arguments raised in their motion for summary judgment, the Defendant Officers argued that Jennings' constitutional rights were not violated by Jennings' arrest for obstructing governmental operations in violation of Ala. Code § 13A-10-2(a) because Jennings' arrest was supported by actual probable cause. (See Doc. 48-1, at 20-25.) Alternatively, they argued that they were entitled to qualified immunity because

1

there was at least arguable probable cause to arrest Jennings for violating Ala. Code § 13A-10-2(a). (See id., at 26-28.) For the same reasons they were entitled to qualified immunity, the Defendant Officers also said that they were entitled to State-agent Cranman immunity for the state law false arrest claim. (See id., at 34.)

In making these arguments, the Defendant Officers cited, among other cases and authorities, to Judge Burke's decision in Edger v. McCabe, 572 F. Supp. 3d 1143 (N.D. Ala. 2021), rev'd and vacated, No. 21-14396, 2023 WL 6225140 (11th Cir. Sept. 26, 2023). (See Doc. 48-1, at 20, 27-28, 34.) For its part, in its motion to dismiss, the City did not specifically cite Edger. However, one of the City's arguments was that the claims against it failed because its Officers did not violate Jennings' constitutional rights and because the City shared in the Officers' State-agent and peace officer immunity. (See Doc. 46-1, at 14-15.) Thus, by implication, the City adopted the Defendant Officers' arguments regarding the lack of a constitutional violation and their entitlement to qualified immunity.

### C.  The Edger Appeal

In any event, during and after the initial dispositive-motion briefing in this case, Edger was on appeal to the Eleventh Circuit. As pointed out by this Court, the Eleventh Circuit has now recently issued its decision in Edger. (Doc. 57.)[1] Accordingly, this Court has requested supplemental briefing "addressing what effect that the Edger decision has on the motion before the Court." (Id.) Defendants respectfully urge this Court that the Eleventh Circuit's decision in Edger does not change the conclusion that the Defendant Officers are entitled to summary judgment and the City is entitled to dismissal. Here is why.

---

[1] The day after the decision was issued, the Eleventh Circuit issued an order reflecting that a judge of the Court had withheld issuance of the mandate. See Edger, No. 21-14396, Doc. 45. The undersigned also respectfully states, on information and belief, that a petition for panel and en banc rehearing may be forthcoming from McCabe.

2

## II.     Overview of Edger

In Edger, the plaintiff brought a § 1983 false arrest claim and a state law false arrest claim against two Huntsville police officers and the City itself after he was arrested for obstructing governmental operations in violation of Ala. Code § 13A-10-2(a)(1) (the same statute at issue in the instant case). Edger v. McCabe, No. 21-14396, 2023 WL 6225140, at *1 (11th Cir. Sept. 26, 2023). And, just as in the instant case, the facts of Edger were not in dispute, as they were all captured on body camera video. See id.  On cross-motions for summary judgment, the district court found that the defendants were entitled to federal and state law immunities. It reasoned that even though Edger committed no acts giving rise to actual probable cause, a reasonable but mistaken officer could nonetheless have believed his refusal to produce physical identification was a crime, and the officers thus had arguable probable cause to make the arrest. Id. at *2.

The Eleventh Circuit disagreed with the district court that there was arguable probable cause for Edger's arrest. In its analysis, the Eleventh Circuit began by noting that Edger could have violated § 13A-10-2(a)(1) based on either of "two theories." Id. at *4. First, Edger could have obstructed the officers by using "intimidation" or physical force" to obstruct the investigation. Id. Second, Edger could have committed an "independently unlawful act" if he wrongfully refused to identify himself as he had been ordered to do. Id.[2] As the Eleventh Circuit wrote, "[t]he officers are entitled to qualified immunity if they had arguable probable cause to arrest Edger **based on any of these theories**." Id. (emphasis supplied).

However, the Eleventh Circuit concluded that, based on the undisputed video evidence, Edger's words and actions during his interactions with the officers did not rise

---

[2] The officers in Edger proposed two different statutes, the Alabama Stop-and-Identify statute (Ala. Code § 15-5-30), and the Alabama driver's license statute (Ala. Code § 32-6-9), for why Edger was required to produce his identification. Id. at *4. In this case, the Defendant Officers are relying solely on Ala. Code § 15-5-30, so, with utmost respect, the Eleventh Circuit's analysis of the requirements of Ala. Code § 32-6-9 are omitted from this Brief.

to the level of "intimidation" or "physical force." Id. The Eleventh Circuit then turned to the second theory advanced by the defendants – that Edger had violated Alabama's Stop-and-Identify statute, Alabama Code § 15-5-30. Id. at *5. In regard to this theory, the Eleventh Circuit reasoned that Ala. Code § 15-5-30 delineates three things that police officers may ask for – an individual's name, address, and an explanation of his actions. Id. Section 15-5-30 does not require anyone to produce "physical identification" such as an "ID" or "driver's license." Id. Importantly for the purpose of analyzing Edger's effect on the instant case, the officers in Edger never asked Edger for his name or address, but only demanded that he produce physical identification. Id. As the Eleventh Circuit noted, Edger's objections to the officers were "clearly related to the unlawful demand that he produce physical identification." Id.

### III. Jennings' Case Stands in Contrast to Edger Factually and Legally

Jennings' case is distinguishable from Edger and compels a different result – that the Defendant Officers here are entitled to the appropriate federal and state law immunities. Specifically, the facts of Jennings' case stand in sharp contrast to those of Edger, and the Defendant officers here had both actual and arguable probable cause to conclude that Jennings violated Ala. Code § 15-5-30 under both "theories."

#### A. Unlike Edger, Jennings engaged in "intimidation" or "physical force" against the Defendant Officers

First, as fully discussed in the Officers' summary-judgment brief, unlike Edger, Jennings engaged in "intimidation" or "physical force" against the officers. (See Doc. 48-1, at 23-25.) In contrast to Edger, who was frustrated because the car he was working on had just fallen off a jack, but who simply gestured toward officers with empty hands and stood in one spot, see Edger, 2023 WL 6225140, at *4, Jennings employed an aggressive demeanor and loud, agitated tone with the Officers, approached them and was in close

4

physical proximity at times, and stated that they should arrest him and "see what happens," which could certainly be reasonably perceived as an attempt to intimidate. This is conduct that is far more than "words alone" and which satisfies the "first theory" of obstructing governmental operations under Ala. Code § 13A-10-2(a). See Scott v. Palmer, 210 F. Supp. 3d 1303, 1312 (N.D. Ala. 2016), aff'd sub nom. Scott v. City of Red Bay, Alabama, 686 F. App'x 631 (11th Cir. 2017); A.A.G. v. State, 668 So. 2d 122, 128 (Ala. Crim. App. 1995).

In his supplemental brief, in addition to arguing that "no intimidation or physical interference of any kind occurred" (see Doc. 58, at 6), which is patently incorrect based on the video evidence, Jennings also suggests that, because the arrest warrant indicates that Jennings was arrested for failing to provide identification to the officers, rather than for any type of intimidation or physical interference, the Defendant officers cannot rely on the "intimidation or physical interference test" to justify the arrest and show their entitlement to qualified immunity. (See Doc. 58, at 5-7.) Respectfully, this Court should reject this argument because it runs afoul of the well-settled "any-crime rule."

Under the "any-crime rule" an officer is "insulate[d] from false-arrest claims so long as probable cause existed to arrest the suspect for some crime, even if it was not the crime the officer thought or said had occurred." Garcia v. Casey, 75 F.4th 1176, 1187 (11th Cir. 2023) (quoting Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020)). Applying the "any-crime rule" to qualified immunity, an officer is entitled to qualified immunity if he had arguable probable cause to arrest a suspect for any crime, even if that crime was not " 'the offense announced by the officer at the time of the arrest.' " Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1195–96 (11th Cir. 2002) (quoting in turn Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)). For example, in Alston v. City of Darien, 750 F. App'x 825, 833 (11th Cir. 2018) (unpublished), a plaintiff argued that a police officer could not rely on the plaintiff's alleged violation of

5

Georgia's "obstructed tag" law because he actually arrested the plaintiff for a "window tint violation." In rejecting this argument, the Alston court held:

> **"[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."**

Id. at 833 (quoting Lee, 284 F.3d at 1196) (internal quotation marks omitted, emphasis supplied).

Here, it is readily apparent that a reasonable officer could conclude that Jennings' actions fit both "tests" or "theories" of the obstruction statute. Therefore, Plaintiff's argument about which "test" or "theory" was announced at the time of arrest is unavailing to deprive the Defendant Officers of qualified immunity. See Lee, 284 F.3d at 1196.

    B. *Unlike Edger, Jennings did not simply refuse to produce physical identification; rather, he refused to identify himself*

Turning to the second "test" or "theory" provided for in Ala. Code § 13A-10-2 – the "independently unlawful act" test – again, in sharp contrast to the facts Edger, Jennings did not simply refuse to produce "physical identification." The video record of this case is replete with evidence that Jennings refused to identify himself; that is, he refused to provide his name, one of the "specific pieces of information" that an officer is allowed to demand under § 15-5-30. See Edger, 2023 WL 6225140, at *5. Equally importantly, Jennings' objection was not "clearly related to [an] unlawful demand that he produce physical identification." See id. Instead, Jennings repeatedly asserted to the officers that he did not have to identify himself in any way. (See Doc. 47-4, at 18:25:08 to 18:25:12) ("I don't have to identify myself, Alabama's not a stop and identify state."); (Doc. 47-4, at 18:27:06 to 18:27:10; Doc. 47-6, at 18:27:06 to 18:27:10; Doc. 47-8, at 18:27:06 to 18:27:10.) (Jennings stating, in response to Officer Gable saying Jennings has to "identify himself,"

6

"No, I don't."); (Doc. 47-8, at 18:27:50) (Jennings continuing to argue and speak over officers when Brooks states that, "they have a right to identify you.").

In <u>Edger</u>, the officers arrested the plaintiff about two minutes into an encounter where Edger was attempting to explain the situation and where the plaintiff was never asked for his name or address. See <u>Edger</u>, 2023 WL 6225140, at *2. Here, Jennings was arrested after officers made multiple attempts to simply have Jennings identify himself, in a situation in which Jennings had been aggressive and agitated throughout the encounter.

To be sure, Smith did ask Jennings, once and very early in their encounter, if Jennings had "ID." (Doc. 47-4, at 18:24:44 to 18:24:48.) Plaintiff has repeatedly attempted to seize on this very first statement by Smith, as well as post-arrest statements by the Officers, to argue that the Officers were "clearly demanding" that Jennings "produce a physical identification of some kind." (<u>See</u>, <u>e.g.</u>, Doc. 58, at 4-5.) However, after Smith initially <u>asked</u> Jennings if he had "ID," Smith very shortly thereafter directed his efforts to having Jennings <u>identify</u> <u>himself</u>, and Jennings clearly stated that he did not have to <u>identify</u> himself. (Doc. 47-4, at 18:24:59 to 18:25:12.) The video evidence thus does not support the proposition that the Officers <u>demanded</u> <u>only</u> "physical identification" from Jennings. Rather, Smith initially <u>asked</u> Jennings to produce physical identification.

Of course, it is well-settled that the police may ask members of the public and make consensual requests of them, <u>Florida. v. Bostick</u>, 501 U.S. 429, 434–35, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) (collecting cases and examples), "as long as the police do not convey a message that compliance ... is required." <u>Id</u>. at 435, 111 S.Ct. 2382. <u>See also</u> <u>Edger</u>, 2023 WL 6225140, at *5. Smith's initial question about whether Jennings had "ID," was just such a consensual request, but, thereafter, Smith attempted to explain that there was a suspicious person in the yard and more broadly sought to have Jennings identify himself. (Doc. 47-4, at 18:24:59 to 18:25:08.) (Smith saying, "Look, man, don't do this to

7

me," and "There's a suspicious person in the yard, and if you're not going to identify yourself…").

As the Eleventh Circuit recognized in Edger, the Fourth Amendment permits the police to briefly detain a person to investigate criminal activity, triggering that person's obligations to answer questions under state law. See Edger, 2023 WL 6225140, at *5 (citing Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty., 542 U.S. 177, 187, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004) (analyzing Nevada's Stop-and-Identify statute and noting "the source of the legal obligation [to answer] arises from Nevada state law, not the Fourth Amendment")). Here, Alabama law empowers police to demand from an individual his or her name, address, and an explanation of his or her actions, see Edger, 2023 WL 6225140, at *6. Jennings did not comply with the obligations that arise under Ala. Code § 15-5-30. Under this set of facts, which differ from Edger in material ways, a reasonable officer could have believed there was probable cause to arrest Jennings for obstructing governmental operations by violating § 15-5-30. So, this theory also supports the grant of qualified immunity to the Officers.

### IV.     Conclusion

As explained in the Officers' summary judgment brief (and respectfully adopted here by reference), identifying Jennings was the initial task in a series of investigative steps that were necessary to ultimately verify whether he was in the process of committing a crime or not. When Jennings proceeded to try to intimidate the officers and refused to identify himself, the investigation ground to an immediate halt. For this reason, both of the enumerated prongs of § 13A-10-2(a) were supported by probable cause. (See Doc. 48-1, at 22-23.)

Ultimately, the material factual differences between this case and Edger show that the officers had at least arguable probable cause to arrest Jennings under either of the two

"theories" set forth in Ala. Code § 13A-10-2(a). Thus, they did not violate Jennings' clearly established constitutional rights. See, e.g., Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (discussing the qualified immunity standard); Garcia v. Casey, 75 F.4th 1176, 1187 (11th Cir. 2023) ("[T]he arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry in any other qualified immunity case."). This means, in turn, that the officers have both qualified immunity and State-agent Cranman immunity, since the Alabama Supreme Court has largely equated qualified immunity with [State-agent] immunity." Cantu v. City of Dothan, Alabama, 974 F.3d 1217, 1236 (11th Cir. 2020) (citation omitted). " 'Under both Alabama law and federal law, the core issue is whether a defendant violated clearly established law.' That means the same facts that establish an officer is not entitled to qualified immunity 'also establish that [he] is not entitled to' [State-agent] immunity." Id. Moreover, the City is entitled to dismissal for these reasons as well, and the City respectfully adopts its arguments in its brief in support of dismissal in this regard. (See Doc. 46-1, 14-15.) With utmost respect to this Court, despite what appears to be initial similarities between Edger and this case, the stated differences set out herein mean that Edger does not change this result.

**WHEREFORE, PREMISES CONSIDERED,** Defendants respectfully submit this Supplemental Brief and respectfully move this Honorable Court to grant summary judgment in their favor and/or dismissal with prejudice of all claims asserted against it/them by Plaintiff Michael Jerome Jennings in this case.

                                                      Respectfully submitted,

                                                      */s/ C. David Stubbs*
                                                      C. David Stubbs (asb-7248-u83c)
                                                      Attorney for Defendants

*OF COUNSEL:*
**STUBBS, SILLS & FRYE P.C.**
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
Phone: (256) 835-5050
Email: david@stubbssillsfrye.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that the following has been served a copy of the foregoing document, on the 10th day of October 2023, by placing the same in the U.S. mail, postage prepaid and properly addressed; or, if the party being served is a registered participant in the ECF System of the United States District Court for the Northern District of Alabama, by a "Notice of Electronic Filing" pursuant to N.D. Ala. Local Rule 5.4:

Harry M. Daniels, Esq.
4751 Best Road Suite 490
Atlanta, Georgia 30337
Email: daniels@harrymdaniels.com

Bethaney Embry Jones, Esq.
12531 Veterans Memorial Highway
Douglasville, Georgia 30134
Email: bembry@embrylawfirm.com

Joi Travis, Esq.
Post Office Box 550274
Birmingham, Alabama 35255
Email: joi@travislawllc.com

Roderick Van Daniel, Esq.
3003 13th Avenue South Suite 19
Birmingham, Alabama 35255
Email: roddaniel1205@gmail.com

/s/ *C. David Stubbs*
C. David Stubbs (asb-7248-u83c)