UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL JEROME JENNINGS,** | }<br>}<br>} |
| **Plaintiff,** | }<br>} |
| **v.** | } Case No.: 1:22-cv-01165-RDP<br>} |
| **CHRISTOPHER SMITH et al.,** | }<br>} |
| **Defendants.** | } |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' Motion to Certify Controlling Question to the Supreme Court of Alabama. (Doc. # 80). The Motion (Doc. # 80) has been fully briefed (Docs. # 76, 77,[1] 80, 81)[2] and is now under submission. For the reasons discussed below, the Motion (Doc. # 80) is **GRANTED**. This case is **STAYED** until further order of this court.

Under Alabama Rule of Appellate Procedure 18, a federal court may certify a question to the Supreme Court of Alabama "[w]hen it shall appear . . . that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State." *See* Ala. R. App. P. 18(a).

The court concludes the question framed in the separately entered Certification of Question is appropriate for certification because (1) it will resolve questions of law that are determinative

---

[1] The court notes that Documents # 76 and 77 appear to be identical, except for the fact that Document # 77 has attachment # 77-1.

[2] The court also notes that Plaintiff had the right to file a reply brief to Defendants' Motion. (Doc. # 80). There was no obligation to file a reply though. So, the court considers this matter fully briefed.

of this case and (2) there is not a clear, controlling decision on this question from the Supreme Court of Alabama. Further, the answer to this question may determine the outcome of the case before this court because it will resolve whether there was probable cause (and thus qualified immunity[3]) for officers to arrest an individual for violating Alabama Code § 15-5-30, when that individual gave incomplete responses when asked his name and refused to provide physical identification.

As discussed more fully below, Eleventh Circuit panels have addressed § 15-5-30 in three separate decisions. *Edger v. McCabe*, 84 F.4th 1230 (11th Cir. 2023) (holding that an officer violated clearly established law when she arrested an individual for failing to produce an ID or driver's license under Ala. Code § 15-5-30; *Jennings v. Smith*, 2024 WL 4315127 (11th Cir. Sept. 27, 2024) (holding that an officer did not have probable cause to arrest an individual for violating Ala. Code § 15-5-30 when the individual refused to show physical identification), *with Metz v. Bridges*, 2024 WL 5088586 (11th Cir. Dec. 12, 2024) (concluding that an officer had probable cause to handcuff and arrest an individual for violating Ala. Code § 15-5-30 when the individual refused to show physical identification when requested to do so six different times). The Supreme Court of Alabama has not addressed the question of whether § 15-5-30 prohibits a law enforcement

---

[3] Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials, of course, include police officers.

Recently, controversy over the doctrine and its application has grown, particularly from the academy. *See, e.g.*, Abigail Sloan, *Shoot First, Think Later, Pay Never: How Qualified Immunity Perpetuates the Modern-Day Lynching of Black Americans and Why Abolition is the Answer*, 37 J. CIV. RIGHTS & ECON. DEV'T 49, 53 (2024) ("Qualified immunity is the court-created doctrine that allows police a license to kill . . . ."); Fred O. Smith, Jr., *Formalism, Ferguson, and the Future of Qualified Immunity*, 93 NOTRE DAME L. REV. 2093, 2095 (2018) ("In recent years, federal courts scholars have undermined some of the basic empirical and legal assumptions undergirding qualified immunity[.]"); William Baude, *Is Qualified Immunity Unlawful?* 106 CAL. L. REV. 45, 88 (2018) ("The Court's crusade to enforce the doctrine of qualified immunity does not serve congressional intent or the rule of law."); Joanna C. Schwartz, *How Qualified Immunity Fails*, 127 YALE L.J. 2, 70 (2017) ("My findings suggest that the Court's efforts to advance its policy goals through qualified immunity have been an exercise in futility.").

officer from demanding the production of identification. Definitively answering this question is crucial because it could clarify and shape the course of future federal litigation about *Terry*[4] stops in Alabama – stops that occur frequently and that can pose significant danger for the officers involved. *See Jennings*, 2024 WL 4315127, at *4 ("Police officers 'conduct approximately 29,000 arrests every day – a dangerous task that requires making quick decisions in circumstances that are tense, uncertain, and rapidly evolving.'") (quoting *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019)).

**I.    Style of the Case**

The style of the lead case is reflected in the caption.

**II.   Statement of the Facts and Circumstances**

The case before this court shares a familiar background with *Edger* and *Metz*. Police arrive at a scene and have reason to suspect that a person there is engaging in or is about to engage in criminal activity. During the course of gathering information about the suspect and his activity, and unsatisfied with his responses to their questions, the police eventually ask the suspect to produce physical identification. The suspect refuses to provide such identification and the police arrest him, at least in part based on probable cause that the suspect has obstructed governmental operations in violation of Alabama Code § 13A-10-2.

*Edger* and this case turned on the Eleventh Circuit's construction of Alabama Code § 15-5-30, which is known as Alabama's "stop-and-identify statute." *Metz* also involved an application of the statute. Section 15-5-30 provides:

> A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

suspects is committing, has committed or is about to commit a felony or other public offense and *may demand of him his name, address and an explanation of his actions*.

Ala. Code § 15-5-30 (emphasis added).

The recurring question in these cases is whether Alabama Code § 15-5-30's language of "may demand of him his name, address and an explanation of his actions" authorizes a police officer to also "demand" physical identification and to arrest a suspect if they refuse to provide it. Courts have split on this question because they disagree on whether the statute's language of "may demand" followed by the list of "his name, address and an explanation of his actions" makes it unlawful for an officer to request anything beyond the listed items of "name, address, and an explanation" – namely, physical identification if that is available.

One potential source of this confusion relates to the word "demand" in the statute. "Demand" often means something more than "request." *See* Webster's Third New International Dictionary 598 (1993) (defining "demand" in part as "to ask (a person) *authoritatively* or formally for information") (emphasis added). Therefore, one issue is whether the statute authorizes an officer to obtain an answer about a suspect's identity (*i.e.*, the suspect's name) through multiple methods, including by asking for physical identification.

Another potential source of confusion is whether the list of items in the statute is exclusive. The Eleventh Circuit has based its conclusion about § 15-5-30 on the semantic canon of statutory construction, *expressio unius est exclusio alterius*, which roughly translated means "the expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Text* 107 (2012). Although this canon may appear relevant for interpreting a statute that lists items, such as § 15-5-30, "[v]irtually all the authorities who discuss

4

the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context." *Id.* (citations removed).

The question certified matters to federal courts because we are often called on to determine whether an officer who arrests a suspect for refusing to provide identification has probable cause to believe that the suspect violated § 15-5-30. If an officer has such probable cause, she is entitled to qualified immunity because there is no violation of any clearly established Fourth Amendment right based on the arrest. If the officer does not have probable cause, then they are not entitled to qualified immunity.

Without question, this inquiry is centered solely on state law. As the Eleventh Circuit has made clear, "any obligation to answer police questions arises from state – not federal Constitutional-law." *Edger*, 84 F.4th at 1239 (citing *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 187 (2004)). The Eleventh Circuit concluded that "[t]here simply is no state law foundation for [an officer to] demand that [someone who is stopped under *Terry*] produce physical identification." *Id.* The Supreme Court of Alabama has never interpreted § 15-5-30. And, federal courts interpreting are simply making *Erie*[5] guesses when they adjudicate what the statute authorizes and does not authorize. In making its *Erie* guess in *Edger* (that is, in interpreting the statutory text), the circuit concluded that § 15-5-30 "is clear and requires no additional construction." *Id.* The court determined it was "clearly established at the time of [] Edger's arrest that [the officer] could not demand he produce physical identification." *Id.* Therefore, there is a substantial need for the Supreme Court of Alabama to answer this question.

---

[5] *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### A. Alabama Caselaw

Again, this court's research shows that the Supreme Court of Alabama has never decided whether the language of "may demand" followed by the list of "his name, address and an explanation of his actions" operates to preclude a law enforcement officer from requesting physical identification. The Alabama Court of Criminal Appeals has offered some analysis of the stop-and-identify statute, but that analysis does not directly answer the question posed in the court's certification.

The Alabama Court of Criminal Appeals has noted, for example, that "[i]nherent in an officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of the suspect's cooperation." *Wright v. State*, 601 So. 2d 1095, 1096 (Ala. Crim. App. 1991) (citing *Walker v. City of Mobile*, 508 So. 2d 1209 (Ala. Crim. App. 1987)). The Court of Criminal Appeals has also described § 15-5-30 as "a codification of the principles announced in *Terry v. Ohio*, 392 U.S. 1 (1968)." *Hopkins v. State*, 661 So. 2d 774, 778 (Ala. Crim. App. 1994); *see also Hickman v. State*, 548 So. 2d 1077, 1080 (Ala. Crim. App. 1989) (citing *Terry* together with Ala. Code § 15-5-30). And in *Walker*, when discussing § 15-5-30, the Court of Criminal Appeals, quoting from the United States Supreme Court case *Adams v. Williams*, stated that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Walker*, 508 So. 2d at 1212 (quoting *Adams*, 407 U.S. 143, 145-46 (1972)).[6]

---

[6] Additionally, there is a line of cases from the Alabama Court of Criminal Appeals in which the court acknowledges that § 15-5-30 may be used to ask for a driver's license, although to be fair each of these cases involves driving. *See, e.g.*, *Gradford v. City of Huntsville*, 557 So. 2d 1330 (Ala. Crim. App. 1989) ("Officer Young stopped the appellant and asked him to produce his driver's license . . . . Section 15-5-30, Code of Alabama, 1975, provides

6

Consider this hypothetical. A law enforcement officer is dispatched to a commercial business on a weekend. The 911 call that triggers the dispatch indicates there is a person trying to access the building. When the officer arrives on the scene, she encounters an individual who is standing near a door to the building. The officer asks what he is doing. The individual replies that he is waiting on a ride to pick him up and take him home. The officer asks him his name and the location of his home. The suspect hesitates a moment but finally mumbles: "Ummm, John Smith. 123 Main Street." There is no Main Street in the town, and the officer concludes, based on the circumstances, there is also reason to question the accuracy of the name provided and the explanation of the suspect's actions. Given that § 15-5-30 is a codification of *Terry* stop principles, and in light of the *Wright* court's holding that "[i]nherent in an officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of the suspect's cooperation," *Wright*, 601 So. 2d at 1096, are we to understand that *Terry* principles and state law do not allow the officer to request identification[7] to verify the questionable name and address

---

as follows . . . ."); *Minnifield v. State*, 390 So. 2d 1146, 1152 (Ala. Crim. App. 1980), *cert denied*, 390 So. 2d 1154 (Ala. 1980) ("The concept of the investigative stop has been adopted by statute in Alabama, § 15-5-30 . . . and though *Terry* was factually concerned with stops of suspicious characters on sidewalks, it is clear . . . that the *Terry* principle is equally applicable to the stop of a vehicle."); *Kemp v. State*, 434 So. 2d 298, 300-01 (Ala. Crim. App. 1983) (describing a *Terry* stop of an automobile in which the officer "asked the appellant for identification," *id.* at 300, and stating "'[t]he concept of the investigative stop has been adopted by statute in Alabama, § 15-5-30,'" *id.* at 301) (quoting *Minnifield*, 390 So. 2d at 1152); *Childress v. State*, 455 So. 2d 175, 176-77 (Ala. Crim. App. 1984) (describing a *Terry* stop in which a person seated in a parked car was asked for his driver's license and provided a birth certificate instead, and stating "[t]he principles set forth in [Alabama decisions discussing *Terry v. Ohio*] have now been codified in Title 15-5-30").

[7] In *Edger*, the Eleventh Circuit noted that "neither the parties nor our own research can identify any Alabama law that generally requires the public to carry physical identification . . . ." *Edger*, 84 F.4th at 1239. Of course, the court assumes that citizens are not required to carry identification, and that, to the extent law enforcement officers are permitted to ask for physical identification, if a citizen is not carrying identification, there is no obligation to produce that which does not exist.

provided? Is a conclusion that the officer cannot make such a request as part of her investigation wholly counter-intuitive to the purpose of a *Terry* stop?

There is, therefore, an open question under Alabama caselaw about whether § 15-5-30 authorizes a police officer to "demand" physical identification in a non-driving context.

### B.     Federal Court Decisions

The different conclusions reached by the judges who have ruled on this question reflect the apparent uncertainty about how to read Alabama Code § 15-5-30. Below, the court summarizes the three cases in which courts have addressed this question.

The first Eleventh Circuit decision that interpreted § 15-5-30 was *Edger v. McCabe*, 84 F.4th 1230 (11th Cir. 2023). In *Edger*, a car mechanic (Edger) was called out to repair a client's car that was parked in a church parking lot. *Edger*, 84 F.4th at 1233. Edger went to the church to pick up the keys in the afternoon and returned in the evening with his stepson to begin repairs. *Id.* The church's security guard observed the two and called 911, stating "I have two Hispanic males, messing with an employee's car that was left on the lot." *Id.* Officer Krista McCabe arrived on the scene and began asking Edger questions about what he was doing. *Id.* at 1233-34. She never asked for his name or address. *Id.* And, without inquiring about his name, Officer McCabe asked "do y'all have driver's license or IDs on you?" *Id.* at 1234. Edger refused to provide an ID. *Id.* Officer Perillat then arrived and while Edger was stating his refusal to provide identification to Officer McCabe, Officer Perillat began handcuffing Edger. *Id.* Edger offered his driver's license three times while he was being handcuffed, but Officer Perillat did not stop and eventually searched and detained Edger. *Id.* Edger was charged with obstructing governmental operations in violation of Alabama Code § 13A-10-2(a)(1), which specifies that a person violates that section if "by means of intimidation, physical force or interference or by any other *independently unlawful act*, he"

obstructs a governmental function. *Id.* at 1237 (emphasis in original) (citing Ala. Code § 13A-10-2(a)(1)). These charges were later dropped. *Id.* at 1234.

Edger filed a § 1983 lawsuit alleging false arrest in violation of the Fourth Amendment. *Id.* at 1235. The district court determined that Edger did not violate § 15-5-30 when he failed to provide a form of ID. Therefore, the officers lacked probable cause to arrest Edger for a violation of Alabama Code §§ 32-6-9 and 13A-10-2(A). Nevertheless, the district court determined that the officers were entitled to qualified immunity because there was arguable probable cause to make the arrest under § 13A-10-2(A). *Id.* As Judge Burke concluded:

> [A] reasonable but mistaken officer could've believed that Edger's failure to provide his driver's license violated Ala. Code § 15-5-30. Edger's failure to comply with McCabe's request for identification could provide additional justification for an officer's belief (albeit mistaken) that Edger was obstructing a governmental operation. Therefore, McCabe had arguable probable cause and qualified immunity attaches to her actions, and by extension, Officer Perillat's.

*Edger v. McCabe*, 572 F. Supp. 3d 1143, 1154 (N.D. Ala. 2021), *rev'd by* 84 F. 4th 1230 (11th Cir. 2023).

The Eleventh Circuit reversed and vacated the district court's judgment. *Id.* at 1241. In doing so, the panel reasoned that there was no probable cause (actual or arguable) to believe that Edger had violated Alabama Code § 13A-10-2(a)(1) by violating Alabama's stop-and-identify statute (§ 15-5-30) because § 15-5-30 does not authorize an officer to ask for anything more than the three things listed in the statute. *Id.* at 1238. Those three things are: name, address, and an explanation of his actions. *Id.* The panel reasoned: "Section 15-5-30 does not require anyone to produce an 'ID' or 'driver's license' as Officer McCabe demanded. Indeed, it does not require anyone to produce anything. Instead, it grants Alabama police the authority to request three specific pieces of information." *Id.* Because "the plain text of the Alabama statute is so clear that no reasonable officer could have interpreted it to permit Mr. Edger's arrest for failing to produce

9

his 'ID' or 'driver's license' under § 15-5-30," the panel reasoned, there was no "state law foundation for Officer McCabe's demand that Mr. Edger produce physical identification." *Id.* at 1238-39.

The *Edger* panel added that there were three premises leading to this conclusion: first, that while police may ask the public questions, the public may decline to answer such questions; second, that "any obligation to answer police questions arises from state – not federal Constitutional – law"; and third, that "the Alabama statute is clear" that police are only authorized to ask three questions under § 15-5-30. *Id.* at 1239 (citations removed).

The next case to address § 15-5-30 was *Jennings v. Smith*, 2023 WL 8859760 (N.D. Ala. Dec. 21, 2023), *rev'd by* 2024 WL 4315127 (11th Cir. Sept. 27, 2024). Again, *Jennings* is the case currently on remand before this court and the case in which the court has certified this question. In *Jennings*, three police officers arrived at a house after a 911 caller who lived across the street requested that police check on her neighbors' home. *Jennings*, 2024 WL 4315127, at *1. The caller had "reported that her elderly white neighbors had left town and she saw an unfamiliar gold vehicle and a young Black male around the home." *Id.* When the officers arrived, they observed Jennings (a Black male) holding a garden hose. *Id.* They asked him what he was doing and he said, "watering flowers," and "I'm supposed to be here. I'm Pastor Jennings. I live across the street . . . I'm looking out for the house while they gone, I'm watering they flowers." *Id.* One officer asked, "do you have, like, ID?" and motioned with his hands as if to request a driver's license. *Id.* Jennings started walking away and said, "Oh, no man, I'm not gonna give you no ID . . . I ain't did nothing wrong." *Id.* After some more back-and-forth, Jennings said: "You see a Black man out here watering neighbors' flowers . . . I don't want to hear you, you want to lock me up, lock me up." *Id.* One officer "warned Jennings that he would get an 'obstruction charge' if he continued walking away,"

10

to which Jennings replied "You can do whatever you want. Do it." *Id.* At this point, the officers put him in handcuffs and told him that "you have to identify yourself to me" and that the officers had a right to identify him. *Id.* at *1-2. One officer said, "It's okay if you're out here to water the plants, talk to us." *Id.* at *1. When Jennings continued to yell at the officers, another officer stated "Everything is being audio and video recorded. You won't shut your mouth." *Id.* at *2. Jennings then replied: "You don't shut your mouth. You talk to me like I'm a child, boy!" *Id.* The officers then arrested him and charged him under Alabama Code § 13A-10-2(a) for obstructing government operations. *Id.* at *2-3. Although not referenced in the Eleventh Circuit statement of facts, the Rule 56 record included the fact that one of the officers explained to Plaintiff while he was handcuffed and sitting in the police cruiser that if he had told the officers his full name instead of "Pastor Jennings," it might have dispelled any reasonable suspicion. *Jennings v. Smith*, 2023 WL 8859760, at *3 (N.D. Ala. Dec. 21, 2023).

Jennings sued the officers under § 1983 for unlawful and retaliatory arrest (among other things). The undersigned granted summary judgment in favor of the officers and granted the City's motion to dismiss after concluding that the officers had qualified immunity. *See id.* at *2.

The Eleventh Circuit reversed, holding that under its *Edger* decision, there was no probable cause to arrest Jennings for his refusal to show physical identification to the officers. *Id.* at *3-4. The panel first emphasized that "[p]robable cause is the cornerstone of Jennings' appeal. The existence of probable cause both allows for a qualified immunity defense and defeats § 1983 claims for false and retaliatory arrests." *Id.* at *2. The panel quoted from *Edger* in reasoning that "while there are no 'magic words' that an officer must utter, there is a marked difference between asking for three specific pieces of information and demanding a physical license or ID." *Id.* at *4 (quoting *Edger*, 84 F.4th at 1239). The panel noted that Jennings provided information to the officers that

11

closely tracked what officers may request under § 15-5-30 by stating "I'm supposed to be here. I'm Pastor Jennings. I live across the street . . . I'm looking out for the house while they gone, I'm watering they flowers." *Id.* With this background, the panel proceeded to apply *Edger* and concluded that "Jennings was under no legal obligation to provide his ID," and that "because *Edger* explained that Alabama Code § 15-5-30 was, and is, clearly established law, 84 F.4th at 1239, these officers lacked even arguable probable cause." *Id.*

The third and most recent Eleventh Circuit decision to address § 15-5-30 is *Metz v. Bridges*, 2024 WL 5088586 (11th Cir. Dec. 12, 2024). *Metz* is an unpublished opinion.[8]

Metz and a colleague were visiting an office of the Alabama Department of Human Resources ("DHR") and filming a video. *Id.* at *1. The DHR security guard noticed them and asked them to leave several times. *Id.* When they refused, the security guard asked a DHR employee to call 911 to inform a dispatcher that there were men "filming inside of a building they're not supposed to be in." *Id.* Officer Bridges arrived, and a DHR employee pointed out the men and stated: "[t]hese men are videoing down here." *Id.* Officer Bridges asked six times for the two men to produce identification, and they refused each time. *Id.* Officer Bridges handcuffed them. *Id.* Officer Dodson arrived and was told that the men were refusing to leave after the security guard asked them to do so; Officer Dodson informed the men that they were trespassing and asked them to identify themselves. *Id.* When they refused, Officer Dodson searched them. *Id.* The men were later allowed to go. *Id.*

Metz brought a § 1983 claim against the officers for violating his Fourth Amendment rights. *Id.* at *2. After the officers moved to dismiss on qualified immunity grounds, the district

---

[8] The court fully appreciates that *Metz* is not precedential and *Edger* is controlling. But, as discussed below, the significance of *Metz* is that it permitted the arrest of an individual for failure to produce identification; therefore it appears the *Metz* panel's determination is inconsistent with *Edger* and *Jennings*. A clear rule pronounced by the Supreme Court of Alabama would advance uniformity in this area.

court denied the motion, holding that there was no valid *Terry* stop and therefore no basis for law enforcement to demand identification. *Metz v. Bridges*, 2023 WL 2626275, at *1-2 (M.D. Ala. Mar. 24, 2023).

The district court in *Metz* made a passing reference to § 15-5-30, but it did so merely to state that the Supreme Court had "analyzed an arrest made when a suspect refuses to produce identification and has held that" an officer conducting a *Terry* stop can require a suspect to answer questions when there is a "state law requiring a suspect to disclose his name in the course of a **valid** *Terry* stop." *Id.* at *1 (quoting *Hiibel*, 542 U.S. at 187) (emphasis in original). "Alabama has such a statute," the district court stated. *Id.* (citing Ala. Code § 15-5-30). Without elaborating on the § 15-5-30 point, the district court concluded that the officers did not have qualified immunity because "there was no arguable reasonable suspicion of trespass upon which to base a *Terry* stop." *Id.* at *2. The officers appealed.

On review, an Eleventh Circuit panel reversed, concluding that the *Terry* stop was valid. It then addressed the question that the district court had not – whether the officers had violated Metz's rights when they arrested him for failing to identify himself and produce identification when the officers requested it. *Metz*, 2024 WL 5088586, at *4. The panel first outlined the test for establishing qualified immunity, explaining that once a public official proves "that he was acting within the scope of his discretionary authority when the alleged misconduct took place," the burden shifts to the plaintiff to show that "the defendant violated a constitutional right" and "the right was clearly established at the time of the alleged misconduct." *Id.* at *2 (citations removed). The constitutional right at issue in this case was whether the officers violated the Fourth Amendment by arresting (that is, handcuffing) Metz without probable cause or arguable probable cause, which is sufficient to establish qualified immunity for a Fourth Amendment false arrest claim. *Id.* at *3.

13

Relevant to the certified question presented here, the panel considered whether Metz's refusal to produce identification gave the officers arguable probable cause to arrest Metz for violating "Alabama's stop-and-identify statute," also known as Ala. Code § 15-5-30. *Id.* at *4. Like the district court had, the Eleventh Circuit panel answered this question in the affirmative, concluding that "[o]nce Officer Bridges validly had stopped Metz, he was allowed to ask Metz for identification, and to arrest him when he refused. . . . Alabama's stop-and-identify statute imposes this requirement."[9] *Id.* (citing Ala. Code § 15-5-30).

## III.  Parties' Arguments

Plaintiff argues that Alabama Code § 15-5-30 "is so clear on its face, no judicial interpretation is needed or should be sought by the court." (Doc. # 76 at 3). Citing to the fact that the Eleventh Circuit in both *Edger* and *Jennings* believed that the statutory language was clear, Plaintiff contends that the court should show restraint and not certify this question to this state's highest court. (*Id.* at 3-5). Plaintiff further points out that Alabama House Bill 34, which was introduced on February 4, 2025, would authorize a law enforcement officer to "demand a person's date of birth," and argues this implies that the Alabama legislature does not believe that Alabama Code § 15-5-30 authorizes an officer to demand physical identification. (*Id.* at 5-7). Plaintiff contends that the certified question, if there is one, should be "is Ala. Code § 15-5-30 ambiguous?" (*Id.* at 7).

Defendants argue that "[c]ertification is appropriate because the authorities are inconsistent regarding the proper interpretation of Alabama Code § 15-5-30, the Supreme Court of Alabama has not ruled on the issue, and the answer to the certified question will terminate this case." (Doc.

---

[9] A district court in the Middle District of Alabama has concluded similarly (in another unreported case) that § 15-5-30 allows an officer to "demand identification under this statute." *Metz v. Dodson*, 2023 WL 2974939, at *7 (M.D. Ala. Feb. 22, 2023).

# 80 at 1). Defendants emphasized that *Metz* was issued "[l]ess than three months after the panel decision in *Jennings* . . . uncritically and with no reference whatsoever to either *Edger* or *Jennings*." (*Id.* at 2). Defendants further cited to a U.S. Supreme Court opinion interpreting a Nevada statute to permit an officer to demand a driver's license where the statute merely authorized ascertaining "identity." (*Id.* at 3). Defendants contend that certification would help federal courts "avoid making unnecessary *Erie* guesses" and offer the state court the opportunity to interpret or clarify existing law. (*Id.* at 8 (quoting *Tobin v. Michigan Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005)). Defendants also note that the word "demand" in § 15-5-30 renders the statute ambiguous, as it could suggest that an officer "has a legal right to an answer from the suspect" and could fulfill that right by asking for identification. (*Id.* at 14). Defendants summarized several Alabama Court of Criminal Appeals decisions in *Terry* stop situations involving drivers, concluding that "the Alabama Supreme Court is likely to give weight" to these decisions. (*Id.* at 15-16). This court fully understands the distinction in an officer's right to ask for a driver's license from the operator of a motor vehicle on this state's roads. But the question about the correct interpretation of § 15-5-30 remains.

After careful review, the court concludes that despite Plaintiff's arguments about the clarity of the statutory language, the need for restraint in certifying questions to state courts, and the existence of an introduced house bill that they believe suggests a legislative understanding of § 15-5-30 consistent with their arguments, certification is appropriate. The statutory language is, simply put, not clear. As discussed at length above, the different outcomes reached by federal courts highlight the ambiguity inherent in this language and the need for a clear answer from Alabama's highest court. Furthermore, the cases that Plaintiff cites in support of the need for "restraint" actually weigh in favor of certification here. *See Mosher v. Speedstar Div. of AMCA*

15

*Intern., Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995) ("Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law."); *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.*, 671 F.3d 1208, 1212 (11th Cir. 2012) (after noting "our practice to show restraint," writing "[b]ut for truly debatable questions 'a federal court should certify the question to the state supreme court'" (quoting *Mosher*, 52 F.3d at 916-17)). The judicially modest approach by a federal court is to defer to state courts about the interpretation of state statutes. Finally, the court notes that it does not accord weight to a House Bill that has been introduced (*i.e.*, not voted on or enrolled) and that in any event is not evidence of the legislative intent at the time § 15-5-30 was enacted.

## IV.     Conclusion

The court believes the question certified in the contemporaneously filed Certification of Question satisfies the requirements of Alabama Rule of Appellate Procedure 18(a): First, it presents a pure question of Alabama law; second, the question is "determinative" of this case in the sense that a negative answer would warrant dismissal of Plaintiff's claims; and third, the Supreme Court of Alabama has never considered or resolved the question. An answer provided by Alabama's highest court would significantly aid this and other federal court's in adjudicating qualified immunity cases in which law enforcement asks for identification as part of a *Terry* stop.

For these reasons, Defendant's Motion (Doc. # 80) is **GRANTED** and this court respectfully asks the Supreme Court of Alabama to answer the question certified.

**DONE** and **ORDERED** this May 19, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE