### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL JEROME JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:22-cv-01165-RDP |
| | ) | |
| CHRISTOPHER SMITH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case is before the court on the Supreme Court of Alabama's answer to the question certified to it by this court. (Doc. # 90). The court has reviewed the parties' briefs (Docs. # 92-95), which were submitted after the Supreme Court's decision.

This court had granted summary judgment to Defendants based on the doctrine of qualified immunity. The Eleventh Circuit reversed and remanded. After remand, this court certified a question to the Supreme Court regarding the proper interpretation of Alabama Code § 15-5-30. The Supreme Court agreed to answer the question and on March 13, 2026, issued its decision. (Doc. # 90); *Jennings v. Smith*, 2026 WL 706449 (Ala. Mar. 13, 2026). The question before the court now is how to apply the Supreme Court's answer to the certified question.

## I.     Background

In December 2023, this court had pending before it two motions: (1) a Motion for Summary Judgment filed by individual Defendants Christopher Smith, Justin Gable, and Jeremy Brooks based on a Federal Rule of Civil Procedure 56 evidentiary record (Doc. # 60); and (2) a Motion to Dismiss filed by the City of Childersburg based on the allegations in Plaintiff Michael Jerome

Jennings's Amended Complaint (Doc. # 62). The court granted both Motions. (Docs. # 60, 61, 62, 63).

The Eleventh Circuit reversed, holding that under its 2023 decision in *Edger v. McCabe*, 84 F.4th 1230 (11th Cir. 2023), the officer Defendants did not have probable cause to arrest Plaintiff for his refusal to show physical identification to the officers. *Jennings v. Smith*, No. 23-14171, 2024 WL 4315127, at *3 (11th Cir. Sept. 27, 2024). The court explained:

> Jennings argues that he was not arrested for refusing to give those three pieces of information but rather because he declined to show physical identification. In support, Jennings relies on this court's decision in *Edger v. McCabe*, 84 F.4th 1230 (11th Cir. 2023). *Edger* held that an Alabama police officer violates clearly established law when she arrests a person solely for failing to provide a driver's license or physical identification under Alabama Code § 15-5-30. 84 F.4th at 1239-40. We agree that this case falls within the purview of *Edger*.

*Jennings*, 2024 WL 4315127, at *3.[1] Later, the Eleventh Circuit further explained: "because *Edger* explained that Alabama Code § 15-5-30 was, and is, clearly established law, 84 F.4th at 1239, these officers lacked even arguable probable cause." *Id*. at *4.

There were two problems with that analysis. First, an obvious one: *Edger* had not been decided when the officer Defendants encountered Plaintiff in May 2022. Second, the Eleventh Circuit's analysis was wholly atextual (more on that below).

## II.    The Underlying Rule 56 Facts

The events which gave rise to this case occurred on May 22, 2022. (Doc. # 1 at 2). On that date, at approximately 6:20 p.m., the Talladega County Emergency Management Communications District received a 911 call from a caller who identified herself as "Amanda" requesting police officers to check on a neighbor's home. (Doc. # 47-1). Amanda stated that her neighbors had left

---

[1] The court notes that the Eleventh Circuit approached this issue based on Plaintiff's argument about why he was arrested, rather than on the undisputed facts in the Rule 56 record. *Jennings*, 2024 WL 4315127, at *3 ("Jennings *argues* that he was not arrested for refusing to give those three pieces of information but rather because he declined to show physical identification.").

2

town that morning and that an unknown gold vehicle was parked in front with people she did not think should be over there. (*Id.* at 00:26 to 00:35). Amanda added that while the neighbors were an elderly white couple, she had seen a younger black male over there a few minutes before. (*Id.* at 00:56 to 1:01). She also stated that she could not see them but had heard "them talking a minute ago out like in their back door, and I can't hear them talking anymore, so they may be in the house now. I don't know." (*Id.* at 1:20 to 1:34).

Childersburg Police Officer Christopher Smith ("Defendant Smith") was dispatched on the call and arrived about five minutes later to the residence. When Defendant Smith arrived at the residence, he found Plaintiff, an African American male, standing in the yard holding a watering hose. (Doc. # 47-4 at 18:24:08). When asked what he was doing on the property, Plaintiff responded, "watering flowers." (*Id.* at 18:24:16). Defendant Smith asked if Plaintiff lived at the residence; Plaintiff responded he did not. (*Id.* at 18:24:28 to 18:24:31). Defendant Smith explained someone had called 911 and reported that Plaintiff was not supposed to be on the property. (*Id.* at 18:24:30 to 18:24:37). Plaintiff responded, "I'm supposed to be here. I'm Pastor Jennings. I live across the street…. I'm looking out for the house while they gone, I'm watering they flowers." (*Id.* at 18:24:37 to 18:24:45).

At this point, Defendant Smith asked Plaintiff if he had any form of identification. (*Id.* at 18:24:45 to 18:24:48). Plaintiff stopped watering the flowers and walked away, stating, "Oh, no man, I'm not gonna give you no ID" and "I ain't did nothing wrong." (*Id.* at 18:24:46 to 18:24:51). Defendant Smith replied, "Well, look, listen I'm not saying that you did nothing wrong, there's a suspicious person in the yard, and if you're not going to identify yourself …." (*Id.* at 18:24:52 to 18:25:06). Plaintiff stated that he did not have to identify himself because Alabama was not a stop-and-identify state. (*Id.* at 18:25:07 to 18:25:10).

Alabama did, however, have a "stop and identify" statute at that time, Ala. Code 1975 § 15-5-30, which provides:

> A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions.

Ala. Code § 15-5-30.

Childersburg Police Officer Justin Gable ("Defendant Gable") arrived at the scene at this point and has testified that he immediately heard Plaintiff being "loud." (Doc. # 47-5 at 4). Plaintiff gestured to Defendant Gable and stated, "That guy know me. He come to my store that got broke in. I live right over there across the street." (Doc. # 47-4 at 18:25:10 to 18:25:16). Defendant Gable asked Plaintiff if he lived at the house, to which Plaintiff replied, "You see a black man out here watering the neighbors' flowers…" before continuing with "You have no right to approach me if I ain't did nothing suspicious, or nothing wrong. Told him I'm a pastor, I pastor at a church …." (*Id.* at 18:25:21 to 18:25:34).

Plaintiff and the two officers kept talking over each other, before Defendant Gable reiterated that they had received a call that a suspicious person was on the property. (*Id.* at 18:25:42). Plaintiff walked towards him and dropped the water hose; he then walked away from the officers and around the side of the house yelling, "I don't care who called y'all…. lock me up and see what happens." (*Id.* at 18:25:42 to 18:25:46). Defendants Smith and Gable followed Plaintiff around the house, emphasizing, "Hey man, just come here and talk to us." (*Id.* at 18:25:47 to 18:25:49). Plaintiff continued to walk away, stating, "I'm going to water these back flowers is what I'm fixing to do" as well as, "Tell me who called y'all." (*Id.* at 18:25:49 to 18:25:53).

Defendant Gable warned Plaintiff that he would get an "obstruction charge" if he kept walking away from the officers. (*Id.* at 18:25:55 to 18:26:05). Plaintiff stopped, turned around, and responded, "You can do whatever you want. Do it." (*Id.*). At this point, the officers detained Plaintiff and applied handcuffs to him, stating, "We're just trying to talk to you" and "I don't want to argue with you….I don't want to arrest you either." (*Id.* at 18:26:05 to 18:26:27). Plaintiff replied, "Go ahead and do what you gotta do, go on and lock me up….it's already a lawsuit." (*Id.*).

At that point, Sergeant Jeremy Brooks ("Defendant Brooks") arrived at the scene. Plaintiff continued talking, stating, "My son was just racially profiled in Michigan, he's got his master's degree….three police officers had profiled him and came in, I was an ex-police officer doing what I told you. I'm a pastor." (*Id.* at 18:26:42 to 18:26:58). Defendant Gable and Plaintiff both began yelling loudly and talking over each other: (1) Plaintiff said, "I don't have to ID myself, take me down and book me, do what you need to do"; (2) Defendant Gable replied, "I have a call on you, you have to identify yourself to me, do you understand that?" (*Id.* at 18:27:00 to 18:27:10). Defendant Gable also stated, "It's okay if you're here to water the plants, talk to us," to which Plaintiff replied, "No, it's alright, it's already a lawsuit, that's fine." (Doc. # 47-8 at 18:27:22 to 18:27:27).

A few more minutes of arguing ensued before Defendant Brooks eventually remarked, "Everything is being audio and video recorded…You won't shut your mouth." (*Id.* at 18:27:53 to 18:27:57). Plaintiff then yelled, "You don't shut your mouth! You don't talk to me like I'm a child, boy." (*Id.* at 18:27:57 to 18:28:00). At this point, Defendant Smith walked up to Plaintiff, stating, "You know what? 10-15, 10-15. I ain't gonna sit there and have that, dude." (*Id.* at 18:27:58 to 18:28:05). Defendant Brooks simultaneously stated, "Look? Go ahead, you're going to jail. You talked your way into going to jail." (*Id.* at 18:28:00 to 18:28:08).

Plaintiff was escorted to a police cruiser and put in the back seat. After running the tag on the gold vehicle, Defendant Smith asked Plaintiff if he was Roy Mallum – the registered owner of the car. (Doc. # 47-4 at 18:32:03 to 18:32:12). Only at that point, after he was placed in the police cruiser, did Plaintiff give the officers his name, Michael Jennings, rather than his title, Pastor. (*Id.*).

Meanwhile, Amanda – the 911 caller – continued conversing with Defendants. Amanda stated that she did not realize it was Plaintiff in the neighbors' yard and believed it to be a teenager, or she would not have called. (Doc. # 47-6 at 18:30:59 to 18:31:10). She also stated, "He does live right there, and he would probably be watering their flowers; this is probably my fault." (Doc. # 47-4 at 18:31:20 to 18:31:26). Amanda refused to give Defendants her full name for fear it would be published in the paper in connection with the event. (Doc. # 47-6 at 18:33:15 to 18:33:47).

Shortly thereafter, Defendant Smith approached Plaintiff while he was seated in the police cruiser and stated, "Any time the police come out, and they say 'we want to identify you,' you have to identify yourself, because there's a reasonable suspicion that it's a….man, that there's a vehicle." (*Id.* at 18:32:41 to 18:32:50). Defendant Smith further explained that if Plaintiff had simply told the officers his name, it might have dispelled any reasonable suspicion.[2] (*Id.* at 18:32:53 to 18:32:57). Plaintiff replied that he had told him his name was Pastor Jennings, to which Defendant Smith replied, "That's not a name; that's a pastor." (*Id.* at 18:32:56 to 18:33:05).

Defendants convened to discuss potential charges that might apply to Plaintiff. (*Id.* at 18:34:20 to 18:34:30). Defendant Gable stated that it had been impossible to talk to Plaintiff because all he would reference was "racial profiling" and "suing," but that he had not planned to detain Plaintiff until he began speed walking away as the officers were trying to speak to him. (*Id.* at 18:38:40 to 18:38:55). Defendants charged Plaintiff with the sole offense of "obstructing

---

[2] This is an undisputed fact in the record that the Eleventh Circuit's opinion ignored.

governmental operations" because the officers were responding to a call and Plaintiff would not give them his name or other information. (*Id.* at 18:38:55 to 18:39:14). During this discussion, Defendant Gable remarked, "He seems like a reasonable nice guy, I don't understand….just talk to us, man…" (*Id.* at 18:39:35 to 18:39:55).

### III.    Analysis

#### A.    What Was the Clearly Established Law in 2022

The relevant question before the court is whether, in May 2022, it was clearly established law that an officer did not have even arguable probable cause to arrest a suspect for refusing to provide his full name in violation of § 15-5-30 or provide identification.

Before the court certified the question about § 15-5-30 in May 2025, the court's research showed that the Supreme Court of Alabama had never decided whether the language of "may demand" followed by the list of "his name, address and an explanation of his actions" in the Alabama statute precluded a law enforcement officer from requesting physical identification. (Doc. # 83 at 6). The Alabama Court of Criminal Appeals had offered some analysis of the stop-and-identify statute, but that analysis did not directly answer the question. (*Id.*).

In September 2024, in answering this question here with regard to Plaintiff's circumstances, the Eleventh Circuit relied upon its October 20, 2023, *Edger* decision. *Jennings*, 2024 WL 4315127, at *3-4 (citing *Edger v. McCabe*, 84 F.4th at 1239-40 (11th Cir. 2023)). *Edger* was the first Eleventh Circuit decision to interpret § 15-5-30.

In *Edger*, in 2023, the Eleventh Circuit concluded that "[t]here simply is no state law foundation for [an officer to] demand that [someone who is stopped under *Terry*] produce physical identification." *Id*. (citing *Edger*, 84 F.4th at 1239). Because in 2023, the Supreme Court of

Alabama had never interpreted § 15-5-30, *Edger* represented an *Erie*[3] "guess" by the Eleventh Circuit. *See Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1207 (11th Cir. 2012), *certified question answered*, 117 So. 3d 388 (Fla. 2013); *Ruderman ex rel. Schwartz v. Washington Nat. Ins. Corp.*, 671 F.3d 1208, 1212 (11th Cir. 2012), *certified question answered sub nom. Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943 (Fla. 2013).

The next decision to address § 15-5-30 was this case. Applying the Eleventh Circuit's *Edger* analysis, this court distinguished this case. The circuit court disagreed and reversed, but did so without meaningfully addressing what this court believed were key facts[4] that differentiated this case from *Edger*.

The third case to address § 15-5-30 was the Eleventh Circuit's unpublished decision in *Metz v. Bridges*, 2024 WL 5088586 (11th Cir. Dec. 12, 2024). In *Metz*, the Eleventh Circuit panel

---

[3] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[4] As the court noted in its original opinion granting summary judgment:

> The facts of this case are drastically different [from *Edger*]. When Defendant Smith walked up on the scene, he initially asked Plaintiff if he had any form of physical identification. Had Defendant Smith arrested Plaintiff at that point, solely for failing to give him his driver's license, this case would align with *Edger* and there would be a clear violation of § 15-5-30. However, the video evidence here indisputably shows that, throughout the rest of the encounter, Defendants only asked Plaintiff to *identify* himself – not to produce his driver's license. It was not until Plaintiff had repeatedly refused to identify himself and refused to cooperate with the officers that he was arrested. Indeed, Defendant Smith stated that if Plaintiff had simply told them his name, it may have dispelled any suspicion. Although a panel of our Circuit has ruled that § 15-5-30 only allows a police officer to ask an individual for his name, address, and explanation of his actions, there are no "'magic words' that must be uttered." *Edger*, 2023 WL 6937465, at *6.

> Here, Defendants' request for Plaintiff to identify himself fits squarely within the confines of the state statute. The undisputed body camera footage makes clear that at multiple times during their interaction with Plaintiff, Defendants asked Plaintiff to identify himself. Yet, each time, Plaintiff adamantly refused. Defendants gave Plaintiff several opportunities to cooperate before ultimately arresting him. Therefore, unlike the circumstance in *Edger*, Plaintiff was not arrested because he simply refused to give Defendants his driver's license. Rather, over and over again, he refused to identify himself in any manner that would allow them to know who he is and confirm what he was doing at the house was not illegal.

(Doc. # 60 at 20-21).

considered whether Metz's refusal to produce identification gave the officers arguable probable cause to arrest Metz for violating Ala. Code § 15-5-30. *Metz*, 2024 WL 5088586, at *4. The *Metz* panel answered this question in the affirmative, concluding that "[o]nce Officer Bridges validly had stopped Metz, he was allowed to ask Metz for identification, and to arrest him when he refused . . . . Alabama's stop-and-identify statute imposes this requirement." *Id*. (citing Ala. Code § 15-5-30).

So, according to the panel in this case, in 2023 officers did not have probable cause to arrest a suspect for failing to produce identification. *Edger*, 84 F.4th at 1239. But in December 2024, an officer "was allowed to ask Metz for identification, and to arrest him when he refused." *Metz*, 2024 WL 5088586. With these divergent opinions from the same appellate court, and no interpretation of the state statute from the Alabama Supreme Court, how could it possibly have been clearly established in 2022 that the officers did not have at least arguable probable cause to arrest Plaintiff? Even two separate appellate panels did not agree on this principle of law. And again, these facts occurred before either decision had been issued.

The focus of a qualified immunity analysis "is on whether the officer had fair notice that her conduct was unlawful, [and] reasonableness is judged against the backdrop of the law *at the time of the conduct*." *Gilmore v. Georgia Dep't of Corr*., 144 F.4th 1246, 1258 (11th Cir. 2025) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up) (emphasis added). "'A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Gilmore*, 144 F.4th at 1258 (citing *T.R. by and through Brock v. Lamar Cnty. Bd. of*

9

*Ed.*, 25 F.4th 877, 883 (11th Cir. 2022). None of these sources of law was available in 2022 to put the officers on notice that they did not have probable cause to arrest Plaintiff for his refusal to properly identify himself under § 15-5-30. Simply put, the answer to whether Plaintiff arrest in 2022 was unlawful had not been answered at all, much less with "obvious clarity." *Id*.

Now, however, the Alabama Supreme Court has definitively spoken on this issue of state law. *Jennings v. Smith*, No. SC-2025-0372, 2026 WL 706449, at \*1 (Ala. Mar. 13, 2026). That court answered the following question:

> Under [Ala. Code 1975] § 15-5-30, when a law enforcement officer asks a person for his name, address, and explanation of his actions, and the person gives an incomplete or unsatisfactory oral response, does the statute prohibit the officer from demanding or requesting physical identification?

*Jennings*, 2026 WL 706449, at \*1. It gave the following answer:

> Alabama law is clear -- once an officer has reasonable suspicion to believe that a suspect is committing, has committed, or is about to commit a felony or other public offense, § 15-5-30 empowers the officer to demand that the suspect disclose his or her name and address in a format that would allow the officer to affirmatively identify the suspect.

*Id*. at \*5. And, the Supreme Court further explained:

> If the officer's demand for a name and address is not heeded, then the officer is faced with choices. The officer *can either arrest the suspect* for intentionally preventing the officer from performing a governmental function in violation of § 13A-10-2(a)(2) or *delay the arrest and supplement the demand by asking for more conclusive positive identification*. *Either way*, the suspect bears the burden to completely identify himself or herself during a valid *Terry* stop; thus, *failing to provide sufficient identifying information when demanded to do so violates Alabama law.*

*Id*. (emphasis added).

### B.    There Has Been an Intervening Change in the Law

The mandate rule is a case-specific application of the law-of-the-case doctrine. *United States v. Amedeo*, 487 F.3d 823, 830 (11th Cir. 2007). "The mandate rule has three exceptions: (1)

a later trial produces substantially new evidence; (2) there is a change in controlling legal authority; or (3) a clear error in the earlier appellate decision would work manifest injustice." *United States v. Irey*, 458 F. App'x 854, 856 (11th Cir. 2012) (citing *Amedeo*, 487 F.3d at 830). Here, the second exception to the mandate rule applies.

First, and respectfully, as explained above, this judicial officer believes the Eleventh Circuit erred in holding that a case decided in 2023 providing an *Erie* guess on an undecided issue of state law represented clearly established law on that issue before its decision — here, in 2022. But, this court understands such a basis for not following the Circuit's decision is foreclosed by the law-of-the-case doctrine.

Second, and without any question, the Alabama Supreme Court's decision answering this court's certified question is an intervening change in controlling law. As the Eleventh Circuit has explained:

> Rule 60(b) provides that a district court "may relieve a party ... from a final judgment, order, or proceeding for ... (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Pursuant to this provision, district courts may revisit previous rulings in certain limited circumstances. *See Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir.1990) (noting that a district court may reconsider a denial of a motion for summary judgment when there has been "an intervening change in controlling law") (citation omitted). Rule 60(b) thus gives a district court the statutory basis to exercise its duty to, "[a]t every stage in the proceedings, ... 'stop, look, and listen' to determine the impact of changes in the law on the case before it." *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir.1992) (quoting *Kremens v. Bartley*, 431 U.S. 119, 135, 97 S.Ct. 1709, 1718, 52 L.Ed. 2d 184 (1977)).

*Annunziata v. Sch. Bd. of Miami-Dade Cnty., Fla.*, No. 04-12560, 2005 WL 591205, at *2 (11th Cir. Mar. 4, 2005). That is, "only after a change in law on a controlling issue may a district court reconsider its previous ruling without violating law of the case principles." *Annunziata*, 2005 WL 591205, at *2 (citing *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (per curiam)); *see also Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 943

11

F.2d 1511, 1520 (11th Cir. 1991) (approving district court's recognition and application of change in controlling law rendered after its prior ruling); *BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1192 n. 16 (11th Cir. 2001) (instructing the district court to apply any material changes in state law rendered after its initial decision).

The Alabama Supreme Court's decision is intervening "controlling authority" because a decision by that court is the final authority on the interpretation of Alabama law. *See Noble v. Mitchell*, 164 U.S. 367, 372 (1896) ("[T]he interpretation of a statute of the state of Alabama by the supreme court thereof under the circumstances here presented is binding on us."); *Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945 (11th Cir. 2009) ("[A] state supreme court's answer to certified questions is conclusive on the issue certified.") (cleaned up).

**C.      The Officers Are Entitled to Qualified Immunity for Plaintiff's Arrest**

Plaintiff asserted four claims in the operative complaint: (1) an unlawful arrest claim against Defendants Smith, Gable, and Brooks pursuant to 42 U.S.C. § 1983 (Count 1); (2) a retaliatory arrest claim against Defendants Smith, Gable, and Brooks pursuant to 42 U.S.C. § 1983 (Count 2); (3) a state-law false arrest claim against Defendants Smith, Gable, and Brooks (Count 3); and (4) a state-law false arrest claim against Defendant City of Childersburg (Count 4). (Doc. # 16).

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of the arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1324 (11th Cir. 2014) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)). An officer is entitled to qualified immunity if he has either actual or arguable

probable cause for a warrantless arrest. *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (citing *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir.2009)).

The officer Defendants are entitled to qualified immunity because it was not clearly established in 2022 that their conduct violated Alabama law, specifically § 15-5-30. This conclusion is now compelled by the Alabama Supreme Court's answer to the certified question, which makes clear that the officers had at least arguable probable cause (and, likely probable cause) to arrest Plaintiff for his failure to comply with § 15-5-30:

> If the officer's demand for a name and address is not heeded, then the officer is faced with choices. The officer *can either arrest the suspect* for intentionally preventing the officer from performing a governmental function in violation of § 13A-10-2(a)(2) or *delay the arrest and supplement the demand by asking for more conclusive positive identification. Either way*, the suspect bears the burden to completely identify himself or herself during a valid *Terry* stop; thus, *failing to provide sufficient identifying information when demanded to do so violates Alabama law.*

*Jennings*, 2026 WL 706449, at *5 (emphasis added). Thus, the officer Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

Further, Plaintiff's false arrest claims against the officer Defendants and the City "require[] proof that the defendant caused [him] to be arrested without probable cause." *Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016) (quoting *Walker v. City of Huntsville*, 62 So. 3d 474, 493 (Ala. 2010) (in turn quoting *Higgins v. Wal-Mart Stores, Inc*., 512 So. 2d 766 (Ala.1987))) (cleaned up). "The Alabama Supreme Court has applied the same 'arguable probable cause' standard utilized in this Court's federal qualified immunity cases for determining whether a city police officer receives state-agent immunity for his role in an arrest." *Brown v. City of Huntsville, Ala*., 608 F.3d 724, 741 (11th Cir. 2010) (citing *Borders v. City of Huntsville*, 875 So. 2d 1168, 1180 (Ala. 2003)). Because the officer Defendants had probable cause or at least arguable probable cause to arrest Plaintiff, they are entitled to both qualified immunity under federal law and State-agent immunity under

13

Ala. Code § 6-5-338. Further, "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune. *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003); *see also Shaw v. City of Selma*, 241 F. Supp. 3d 1253, 1287 (S.D. Ala. 2017), *aff'd*, 884 F.3d 1093 (11th Cir. 2018) ("Because Officer Williams is immune, the City of Selma is likewise immune.").

Accordingly, Plaintiff's state-law false arrest claims are also due to be dismissed.

**D.      The Dissenting Opinion**

At times, a review of a dissenting opinion can be illuminating because it helps frame more precisely what the majority has actually decided. For that reason, this court carefully reviewed the Alabama Supreme Court's majority, concurring, and dissenting opinions on the certified question.

The dissent is difficult to follow. It does not meaningfully engage the merits of the certified question or the reasoning adopted by the majority. Instead, it appears principally concerned with a different issue—whether the question should have been certified by the Alabama Supreme Court to begin with. But that issue was resolved when the Supreme Court voted to accept the certified question. The dissent also contains certain unusual features, including repeated references to the undersigned by name. Perhaps it would be best to ignore all that, but the court feels compelled to offer three observations.

First, the dissent does not disagree with the majority's rejection of the Eleventh Circuit's interpretation of § 15-5-30. As the second sentence of the dissenting opinion says:

> Regarding the answer to the certified question, I agree with the main opinion that Ala. Code 1975, § 15-5-30, does not prohibit a law-enforcement officer from demanding physical identification when a person whom the officer reasonably suspects is about to commit a felony or other public offense fails to provide an adequate name, address, or explanation of his or her actions for purposes of identification.

*Jennings*, 2026 WL 706449, at \*11. On the question actually before that court, it was 9-0.

14

Second, the dissent's criticism of this court's certification of the question overlooks an important point. It is true that when this court originally addressed the qualified immunity issue, it did not certify the question. To be sure, although the court believed that *Edger* was incorrectly decided and was wholly atextual,[5] frankly, it never occurred to the court to certify the question before *Edger* was decided,  immediately after *Edger* was decided, or even after this court was reversed in this case. This court believed that was unnecessary in part because it viewed these facts as distinguishable from those in *Edger*. Obviously, the Eleventh Circuit disagreed with that conclusion.

To be clear, the court did not believe certification was warranted until the decision in *Metz* was issued. There, the circuit reversed a district court for *not* applying qualified immunity when an individual was arrested for refusing to produce physical identification. That result simply cannot be squared with *Edger*. So, as the court cataloged previously (Doc. # 83 at 8-14), the federal judiciary was all over the map on the interpretation of § 15-5-30. There was a need for clarity. For that reason, this court turned to the one tribunal that is tasked with interpreting state law that could provide that clarity – the Supreme Court of Alabama.

Third, the tone and approach of the dissent suggest a concern that certification of a state-law question after a federal appellate decision and remand is in some way judicially immodest. The dissent does not fully explain its basis for such a concern (other than the overtone of "trial courts should not question appellate courts").[6] If that is the premise of the dissent's rationale, this court respectfully disagrees. It is not the primary job of federal courts, even circuit courts, to

---

[5] One of the occupational facts of trial-court work is that sometimes the court of review sees the law differently than the court that first confronted the case. Of course, that is the circuit's job – to state clearly what the law is. But, in the context of *Erie*, the circuit court (like a district court) is stating what it thinks the state law is.

[6] Any suggestion that the Alabama Supreme Court's answering the question violated the law-of-the-case doctrine simply misunderstands the substance of that doctrine.

15

authoritatively declare what Alabama law is; rather, the federal bench simply makes *Erie* guesses. On the other hand, and unequivocally, the Supreme Court of Alabama is the final arbiter of our state's laws.

Not only is that a reality – it raises an important question: If a federal court (here, the circuit court) has misapprehended state law, why would the state's highest court not have the authority, the responsibility, and the desire to correct that federal court's misunderstanding if given the opportunity?[7] And, if a review reveals that a federal court's interpretation was mistaken, is it not preferable to arrive at the correct answer, regardless of the procedural stage at which that answer is obtained? Accuracy in the interpretation of the law is not a value that diminishes over time. To the contrary, the proper interpretation of state law is best served when the state's highest court speaks definitively, and federal courts faithfully follow that guidance. The Alabama Supreme Court has now spoken with clarity. This court will faithfully follow its holding.

## IV.     Conclusion

Because the officer Defendants had arguable and actual probable cause to arrest Plaintiff for failing to give his complete name and obstructing their efforts to identify him under Alabama Code § 15-5-30, qualified immunity bars the federal claims in Plaintiff's Amended Complaint, and State-agent immunity bars the state claims.

A separate order will be entered.

**DONE** and **ORDERED** this June 11, 2026.

R. DAVID PROCTOR
SENIOR U.S. DISTRICT JUDGE

---

[7] There is another problem with the dissent's continued wrangling over whether this question should have been certified. Even though the Supreme Court of Alabama has now essentially decided 9-0 that the Eleventh Circuit misconstrued the key statute here, if the dissent's position prevailed, that would leave three police officers in this untenable position: even though they did not violate any clearly established law, they would be forced to trial on a claim that clearly is barred. Not because section 13-5-30 prohibited their conduct; rather, because the court with the responsibility of interpreting Alabama law found a procedural off ramp to avoid doing so.